E-FILED
Tuesday, 12 September, 2006 01:55:42 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Criminal No. 06-10040-02 |
| RUSSELL VANDYKE, | ) ) ) | |
| Defendant. | ) ) | |

FILED
SEP 1 2 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## PLEA AGREEMENT AND STIPULATION OF FACTS

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the United States of America, by Rodger A. Heaton, United States Attorney for the Central District of Illinois, and K. Tate Chambers, Supervisory Assistant United States Attorney, and the defendant, Russell VanDyke, personally and by the defendant's attorney, Chandra L. Justice, hereby enter into this plea agreement.

1.  This document contains the complete and only plea agreement between the United States Attorney for the Central District of Illinois and the defendant. This agreement supersedes and replaces any and all prior formal and informal, written and oral, express and implied, plea agreements between the parties. No other agreement, understanding, promise, or condition between the United States Attorney for the Central District of Illinois and the defendant exists,

1

except as set forth in this plea agreement.

2.   This plea agreement is binding only upon the United States Attorney for the Central District of Illinois and the defendant. It does not bind any United States Attorney outside the Central District of Illinois, nor does it bind any state or local prosecutor. In addition, the plea agreement does not bind the Tax Division of the United States Department of Justice or the Internal Revenue Service of the United States Department of the Treasury.

3.   This agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), and therefore if the Court does not accept the recommendations of the parties, the defendant does not have the right to withdraw his plea of guilty.

## CHARGE(S), ELEMENTS, AND PENALTIES

4.   The defendant will plead guilty to Count 2 of the Indictment, in which the defendant is charged with possession of a stolen firearm, in violation of Title 18, United States Code, §§922(j) and 924(a)(2).

5.   The defendant has read the charge to which the defendant is pleading guilty, and the charge has been explained to the defendant by the defendant's attorney. Furthermore, the defendant fully understands the nature and elements of the crime to which the defendant is pleading guilty. To sustain the charge of possession of a stolen firearm, in violation of Title 18, United States

Code, §922(j) and 924(a)(2), the United States must prove the following propositions beyond a reasonable doubt:

<u>Count 2:</u>   Possession of a Stolen Firearm

Elements:   1.   That the defendant knowingly possessed a firearm;

2.   That the firearm had been transported in interstate commerce before being stolen; and

3.   That the defendant knew that the firearm was stolen.

6.   The defendant understands and agrees that the offense to which he shall plead guilty carries the following potential penalties:

Pursuant to Title 18, United States Code, Section 922(j) and 924(a)(2); Count 2 carries a maximum potential penalty of up to ten years imprisonment; a fine of $250,000; up to life supervised release; and a $100.00 special assessment.

7.   The defendant further understands that upon violation of any of the terms of the defendant's supervised release, the supervised release may be revoked and the defendant may be imprisoned for all or part of the supervised release period without credit for time previously served.

8.   The defendant understands and agrees that the Court may be required to order the defendant to pay restitution. The parties to this agreement have not reached a determination on the issue of restitution. Restitution may

include the cost of incarceration and supervision. The parties acknowledge that the Court may order restitution in whatever amount it deems proper.

## STATUTORY AND APPEAL WAIVERS

### Waiver of Right of Appeal from Conviction and Sentence

9.    The defendant is aware that federal law, specifically, Title 28, United States Code, Section 1291, affords a defendant a right to appeal a final decision of the district court and that federal law, specifically, Title 18, United States Code, Section 3742, affords a defendant a right to appeal the conviction and/or sentence imposed. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to this plea agreement and conviction and to the sentence, including any fine or restitution, within the maximum provided in the statutes of conviction, and the manner in which the sentence, including any fine or restitution, was determined, on any ground whatever, in exchange for the concessions made by the United States in this plea agreement, unless otherwise stated in this paragraph.

### Waiver of Right to Collateral Attack

10.    The defendant also understands that he has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that he received

ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence was otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right. Regardless of any advice the defendant's attorney may have given the defendant, in exchange for the concessions made by the United States in this plea agreement, the defendant hereby knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. The rights waived by the defendant include his right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28,

5

United States Code, Section 2255.

## ADVISORY SENTENCING GUIDELINES

11. The defendant understands that the Court will calculate the defendant's offense level and criminal history category under the United States Sentencing Guidelines, and that the Court will use those calculations to arrive at an advisory sentencing range under the Guidelines. The defendant understands that the Court must consider the advisory Sentencing Guideline range when imposing sentence. The Court shall also consider the other factors listed under Title 18, United States Code, Section 3553(a) in determining the specific sentence to be imposed. The defendant understands that although the Sentencing Guidelines are advisory, the Court may choose to impose sentence in accordance with the Sentencing Guidelines.

12. Based on the information currently available, the defendant and the United States agree on the following points regarding the application of the Sentencing Guidelines to the offense to which the defendant is pleading guilty:

   a. The parties agree, based upon facts currently known by the United States, that the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct in accordance with Section 3E1.1 of the Sentencing Guidelines and, therefore, a two-level reduction in the offense level is appropriate. Acceptance of

personal responsibility shall include cooperating fully with the United States Probation Office in the preparation of a presentence report and not committing any bond violations while on pretrial release, including but not limited to the commission of any local, state or federal offenses. This agreement does not preclude the United States from changing its position if new evidence to the contrary is discovered or if the defendant later demonstrates a lack of acceptance of personal responsibility for the defendant's criminal conduct.

        b.      The parties also agree that if the defendant's base offense level is 16 or higher, then the defendant qualifies for an additional one-point reduction in the defendant's offense level pursuant to United States Sentencing Guidelines Section 3E1.1(b)(2) because the defendant timely notified the United States Attorney's Office of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid trial preparation and permitting the Court to allocate its resources efficiently.

        13.     The defendant and the United States agree that the above statements regarding Sentencing Guidelines are not binding on the Court, and relate only to the positions the parties take regarding the applicable advisory Sentencing Guideline range based upon the information of which they are currently aware. The Court will remain free to make its own independent determination of the applicable advisory Sentencing Guideline range and to impose whatever sentence it deems appropriate.

14. The defendant agrees that at the time of sentencing, the Court will not be bound by any recommendation made by any party, and that the Court will be free to impose whatever sentence it deems appropriate up to the statutory maximum. The defendant agrees and understands that the defendant will not be allowed to withdraw the defendant's guilty plea because of an objection to the calculation of the Sentencing Guidelines, or to the Court's sentencing findings or rulings, or because the defendant receives a sentence higher than that recommended under the plea agreement.

15. The United States reserves the right, in its sole discretion, to make a motion at the time of sentencing for a downward departure from the *advisory* Sentencing Guideline range pursuant to United States Sentencing Guidelines Section 5K1.1, and from any mandatory minimum sentence pursuant to Title 18, United States Code, Section 3553(e), if the defendant provides substantial assistance in the investigation or prosecution of other criminal offenses. The extent of any such recommended departure will depend solely upon the United States' evaluation of the nature, extent, and value of the defendant's assistance, including the defendant's truthfulness.

## DEFENDANT'S OBLIGATIONS

16. As a condition of this entire plea agreement, the defendant will

cooperate fully with the United States and any relevant law enforcement agencies. All information and testimony given by the defendant must at all times be complete and truthful. This means, for instance, that the defendant must neither minimize the defendant's own actions nor fabricate or exaggerate anyone else's actions or involvement. The defendant specifically agrees that he will provide complete and truthful testimony to any federal grand jury, petit jury, or court before which the defendant may be called to testify by the United States. The defendant's status does not hinge upon obtaining a conviction against anyone else; it is dependent solely upon the defendant being truthful about the facts.

17. The defendant agrees to waives and waives any rights the defendant may have under the Speedy Trial Act, and the defendant understands that his sentencing may be delayed until his cooperation has been completed so that at sentencing the court will have the benefit of all relevant information.

18. The defendant and his attorney acknowledge that they have reviewed, and the defendant understands, the possible application of Title 18, United States Code, Section 3553(e). They further acknowledge, consistent with Application Note 3 to U.S.S.G. Section 5K1.1, that the United States is in the best position to assess the value of the defendant's cooperation to the United States and its law enforcement efforts. In return for receiving the opportunity to cooperate with the government and for the opportunity to be considered by the government for a motion and

recommendation for a downward departure pursuant to Section 3553(e), the defendant and his attorney agree to limit any argument regarding the extent of a downward departure for substantial assistance to the government to only those grounds specifically set forth in Section 5K1.1 and its application notes.

19. The defendant further understands and agrees to pay the mandatory $100 Special Assessment for each count of the Indictment to which the defendant is entering a plea of guilty as required under Title 18, United States Code, Section 3013. The defendant agrees to pay this mandatory special assessment at the time of sentencing by delivering a check or money order made payable to the United States District Court and understands that he will be required to do so as a condition of this plea agreement. The failure to comply with this requirement, however, will not constitute grounds for the defendant to withdraw any plea of guilty.

## THE UNITED STATES ATTORNEY'S OBLIGATIONS

20. At the time of sentencing the United States agrees to recommend the following: the United States agrees to recommend a sentence at the low end of the advisory Sentencing Guideline range; and the United States agrees that at the time of sentencing it will move to dismiss the remaining counts of the Indictment.

21. The United States Attorney for the Central District of Illinois agrees to bring no additional criminal charges in the Central District of Illinois against the defendant relating to or arising from the offenses charged in this Indictment, except

for any crime of violence and any crime unknown to the United States Attorney for the Central District of Illinois prior to the time this plea agreement is signed by the parties.

22. The United States agrees that at the time of sentencing it will fully inform the Court of the nature, extent, and value of any cooperation rendered by the defendant.

## FACTUAL BASIS

23. The defendant will plead guilty because the defendant is in fact guilty of the charge contained in Count 2 [handwritten correction over 3] of the Indictment. In pleading guilty to that charge, the defendant stipulates to and admits to the following facts:

On March 27, 2006, Canton Police were notified around 2:17 a.m. of an apparent residential burglary to the Michael Pensinger's residence located at 1120 South Avenue A, Canton, Illinois.

The investigation revealed that Pensinger had been visited earlier that morning by an acquaintance, Matthew Henderson and Minnie Lacock. Henderson told him that he and his friends had run out of gas and requested his assistance.

Pensinger allowed Henderson and Lacock, along with Russell Van Dyke, Tiffany Maggard and Sarah Brenning, to enter his residence. During the visit, Pensinger was engaged in conversations about his firearms, one of which was his loaded AK 47 semi-automatic rifle. The rifle had been hidden under his living room

couch. During this visit the group was allowed access to the kitchen and bathroom.

Eventually Henderson and Pensinger went to get some gasoline at a local service station leaving Van Dyke, Lacock, Maggard and Brenning to wait inside Henderson's parked car. Pensinger said he thought he had locked his residence prior to leaving because he didn't trust his visitors.

Upon arrival back to Henderson's vehicle, Pensinger and Henderson put the gas in Henderson's tank and after a few minutes Pensinger went back home while his visitors left. Upon arriving home, Pensinger found that his front door was unlocked and his loaded AK 47 was gone. He also found that his kitchen window was unlocked.

Maggard, Henderson, Van Dyke, Lacock and Brenning showed up at Davison's residence with an AK 47 rifle. Taggart said that Van Dyke, Lacock and Henderson were handling the rifle at the residence. He said that Lacock was holding it and acting like Bonnie and Clyde - gangster style. Van Dyke took the rifle and pulled the magazine out of it showing it was loaded. Taggart said that Maggard was sitting at the kitchen table saying, "I can't believe I did that. I just stole a fucking gun." Taggart repeatedly told the group to get the gun out of the residence. He then observed Henderson, Van Dyke and Lacock take the gun into the back bedroom and hide it. Taggart kept telling them to leave. Maggard told Taggart that they were not leaving. Taggart said he hit Maggard in the face. He said that

Henderson, Lacock, Maggard and Van Dyke were talking about how much crack they could get in exchange for the AK-47.

Around 3:30 a.m. that same day, Henderson was located along with passenger Cynthia Davison. Henderson told police that the stolen rifle was in Davison's trailer. Police proceeded to the trailer and located the rifle and Lacock, Maggard, Van Dyke and Brenning. The rifle is an AK-47 semi-automatic assault rifle, Serial #BA360667. VanDyke had been previously convicted of a felony.

As the investigation unfolded, Henderson, Van Dyke, Lacock, Maggard and Brenning had concocted a story to go to the Pensinger residence with the intent to steal some guns to obtain cash and/or crack, or cash to buy crack cocaine. There had apparently been conversation with the group and a black male known as "Moe" or "Little Moe" from the Peoria area. The deal was that the group was to obtain a gun or guns and trade Moe for crack cocaine and cash. Once the AK 47 was in the possession of the group, phone calls to Moe's cell phone were made from Davison's cell phone arranging the transaction. Moe however said he couldn't find Davison's trailer so Henderson and Davison were to meet Moe at the BP Station at 5th Avenue and Linn Street and take Moe to the Davison trailer where the AK 47 was hidden. Moe and some other black males were waiting for Henderson at the service station prior to the police stopping Henderson.

The firearm was manufactured outside of Illinois.

## EFFECT OF VIOLATION OF AGREEMENT

24. The defendant further agrees that if the defendant violates the terms of this plea agreement the United States has the option to declare the plea agreement null and void. In the event the United States exercises its option to declare the plea agreement null and void, the United States will be completely released from all of its obligations under this plea agreement and the United States will be free to seek to vacate the defendant's conviction and/sentence, and to reinstate any previously dismissed charges against the defendant or to seek the defendant's resentencing. However, in the event the United States exercises its option to declare the plea agreement null and void, the defendant will not be allowed to withdraw from any previously accepted guilty plea. The defendant also agrees to waive any and all double jeopardy rights, and the applicable statute of limitations should the United States seek to reinstate any charges against the defendant or seek to have the defendant resentenced.

25. Whether or not the defendant has violated the terms of the plea agreement shall be determined by the Court. The burden of proof shall rest with the United States to establish by a preponderance of the evidence that the defendant violated the terms of the plea agreement.

## WAIVER OF CONSTITUTIONAL RIGHTS

26. The defendant understands that by pleading guilty the defendant

surrenders the following rights, among others:

    a.    The right to plead not guilty or persist in the plea of not guilty if already made. If the defendant persisted in a plea of not guilty to the charges the defendant would have the right to a public and speedy trial.

    b.    The right to a trial by jury. The defendant has an absolute right to a jury trial. The jury would be composed of twelve persons selected at random. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded that the United States had met its burden of proving the defendant guilty beyond a reasonable doubt. The defendant could also ask for a trial by the Judge instead of a trial by a jury.

    c.    The right to the assistance of counsel. The defendant has the right to be represented by an attorney at every stage of the proceedings and, if the court finds the defendant is unable to afford an attorney, one will be appointed to represent the defendant at no cost to the defendant.

    d.    The right to confront and cross-examine adverse witnesses. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to see and hear those government witnesses and the defendant's attorney would be able to cross-examine

them. In turn, the defendant's counsel could present witnesses and other evidence on the defendant's behalf. If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the court.

e.    The right against compelled self-incrimination. At a trial, the defendant would have a privilege against self-incrimination so that the defendant could decline to testify, and no inference of guilt could be drawn from the defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on the defendant's own behalf.

27.    The defendant understands that by pleading guilty the defendant is waiving all the rights set forth in the prior paragraphs. The defendant's attorney has explained to the defendant those rights and the consequences of the waiver of those rights.

**AGREED:**

**Defendant's Attorney:**

28.    I have discussed this plea agreement fully with my client, and I am satisfied that my client fully understands its contents and terms. No threats, promises, or representations have been made, nor agreements reached, express or implied, to induce my client to plead guilty other than those stated in this written Plea Agreement. I have reviewed with my client United States Sentencing

16

Guidelines Sections 1B1.3 and 1B1.4 (relevant conduct).

Date: 9-12-06 _____  s/Defense Counsel
                               Chandra L. Justice
                               Attorney for Russell VanDyke

**Defendant:**

29. I have read this entire Plea Agreement carefully and have discussed it fully with my attorney. I fully understand this Agreement, and I agree to it voluntarily and of my own free will. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this Agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, expressed or implied, to influence me to plead guilty other than those stated in this written Plea Agreement. I am satisfied with the legal services provided by my attorney. I understand that by signing below I am stating I agree with everything stated in this paragraph, and I am accepting and entering into this Plea Agreement.

Date: 9-12-06 _____  s/Defendant
                               Russell VanDyke
                               Defendant

**United States:**

30. On behalf of the United States of America, I accept and agree to this

17

Plea Agreement.

Date: 9/12/06        RODGER A. HEATON
                     UNITED STATES ATTORNEY

                     s/K. Tate Chambers
                     ─────────────────────────────
                     K. Tate Chambers
                     Supervisory Assistant United States Attorney